JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Howard Klauss (customer) appeals the trial court's grant of summary judgment to appellee-defendant Marc Glassman, Inc. (Marc's).
 {¶ 2} Customer was shopping at Marc's on a Saturday afternoon between 1:00 and 1:30 in May 1999 when he tripped and fell, breaking his right elbow.[1] Customer states that he was proceeding down an aisle, carrying a shopping basket in his left hand, when he came to a main cross aisle. He turned right into the main cross aisle where a park bench was sitting width-wise in the middle of the aisle. About four feet beyond the park bench, customer testified, was a display standing about three or four feet tall. Because the next aisle customer wanted to go down was just past the park bench, he turned left to walk between the park bench and the display and to proceed directly down the aisle. It appeared to him that the area between the bench and the display, which was directly in line with the aisle he wanted to go down, was clear. Unbeknownst to him, the display was sitting on a wooden pallet he did not see behind the park bench. He tripped on the pallet and landed on his right elbow.
 {¶ 3} Although store employees asked him if he could get up, he was advised by a woman who stopped to help him that his elbow was badly injured and that he should not try to lean on it. After she told the store employees to call EMS, she stayed with customer until they arrived. Customer states that although he did not get her name, he saw her give her name to the manager. When he later asked the manager for her name, he discovered that the manager had made no report of the incident at the time[2] and had not recorded the woman's name.
 {¶ 4} In his deposition, the store manager claimed little recollection of the incident, despite the fact that he acknowledged that this was the only time in his ten years with Marc's that a customer was taken away by EMS or had been injured by tripping over a pallet on the floor. He also admitted that although store policy required him to fill out an incident report, and he had done so in the past for more minor incidents, he did not fill out any report on this accident because he claimed he did not have enough information to complete one.
 {¶ 5} The manager also did not recall what other employees were present, who had helped him set up the original display, whether he stayed with customer until EMS arrived, or whether any other store employee did. He did recall that he had replenished the display that morning between six and eight o'clock. He also stated that although he passed the display between fifty to one-hundred times prior to the fall, he did not look to see whether the display was in order, whether it needed to be replenished, or whether it was in the same condition it had been that morning, because he knew he would not replenish it until the next morning. Thus he admitted that he was not particularly aware of the condition of the display throughout the morning because he did not bother to take notice of it despite at least fifty opportunities to do so. After customer and the manager gave their depositions, Marc's filed a motion for summary judgment which the court granted, stating: "Defendant's motion for summary judgment is granted. Based upon the evidence, even when considered in a light most favorable to the plaintiff, reasonable minds could not come to the conclusion that defendant created a hazardous condition, or had notice of a hazardous condition, and failed to remedy it. Plaintiff had to have been aware of the risks inherent in the type of shopping atmosphere present at plaintiff's [sic] store. Unfortunately, it was the plaintiff's own negligence which was the cause of this accident for failing to see a very large pallet which can only be described as an open and obvious condition." Customer timely appealed.
 {¶ 6} Customer states two assignments of error. For his first assignment of error, customer states:
 {¶ 7} "I. The trial court erred in granting summary judgment where the evidence demonstrated a genuine issue of material fact as to whether defendants-appellees created and/or maintained a hazardous condition within their retail establishment."
 {¶ 8} An appellate court reviews a decision granting summary judgment de novo. Grafton v. Ohio Edison (1996), 77 Ohio St.3d 102. This review is made by construing the evidence most strongly
 {¶ 9} in favor of the nonmoving party, and summary judgment will be affirmed only when the appellate court finds, first, there is no genuine issue of material fact; second, the moving party is entitled to judgment as a matter of law; and third, reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party.Schindler v. Gales Superior Supermarket (2001), 142 Ohio App.3d 146,149.
 {¶ 10} There are two versions of the condition of the pallet at the time of the fall. Manager testified that there was no bare spot on the pallet at the point and at the time where the customer fell; on the contrary, he said that the pallet was full at the time he attended to the customer after the fall. The manager specifically stated that the picture depicting the pallet as completely full was its condition at the time customer fell. Customer, on the other hand, testified that he was certain there was an empty spot on the pallet between the bench and the stack of boxes. This conflict creates an issue of material fact as to the condition of the display at the time of the incident.
 {¶ 11} If the display created a hazard, the next question is what was the duty of the store. When asserting actionable negligence, the injured party "must show the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom." Texler v. D.O. Summers
(1998), 81 Ohio St.3d 677, 680. Neither party in the case at bar disputes that customer was a business invitee. "A business invitee is one who is upon the premises of another by invitation, express or implied, for some purpose beneficial to the owner." Kubiszak v. Rini's Supermarket (1991),77 Ohio App.3d 679, 686.
 {¶ 12} Marc's had a duty of care to the customer as a business invitee: "The owner of the premises must exercise reasonable or ordinary care for the invitee's safety and protection. Included in this duty is the duty to maintain the premises in a reasonably safe condition and to warn the invitee of latent or concealed defects of which the possessor has or should have knowledge." Id. Actual knowledge of the defect on the part of the owner is not required. Rather, "once the evidence establishes that a dangerous condition existed, and that it is a condition about which the owner should have known, evidence of actual knowledge on his part is unnecessary." Perry v. Eastgreen Realty (1978), 53 Ohio St.2d 51,52. Further, "[t]he burden of producing sufficient evidence that an owner has failed to take safeguards that a reasonable person would take under the same or similar circumstances falls upon the invitee." Id. at 53.
 {¶ 13} Marc's argues that when it erected the display on the pallet, no opening existed between the park bench and the display at the far end of the pallet. Because customer had been in the store for only about five minutes and he presented no witnesses to testify regarding how long the gap in the display existed, Marc's claims that he cannot carry the burden of showing that the hazard existed long enough for management to be aware of it. Marc's argues that this lack of constructive notice of the hazard defeats customer's claim.
 {¶ 14} Marc's relies substantially upon Combs v. First NationalSupermarkets (1995), 105 Ohio App.3d 27, and Kubiszak v. Rini'sSupermarket (1991), 77 Ohio App.3d 679. These cases are distinguishable. In Combs the hazard was a spill created by a customer and in Kubiszak the hazard was a hole created by erosion in a parking lot. Here, however, the hazard was allegedly created by the store's employees, rather than by a third party or a force of nature.
 {¶ 15} The actual length of time that the merchandise was missing from the center of the pallet, if it was different from when the pallet was stocked, is not the dispositive question. Whether or not in placing the pallet to motivate customers to remove merchandise from it, Marc's manager failed to take sufficient safeguards a reasonable person would take under the circumstances is the dispositive question, if a portion of the pallet was indeed empty at the time of customer's fall.
 {¶ 16} Defendant's Exhibit F, which shows a reconstruction of the pallet from the viewpoint of the aisle to which customer was headed, indicates that the empty pallet was directly at the end of that aisle, in the path of persons walking into the main cross aisle. See also Plaintiff's Exhibit 7. The question is whether it is reasonably foreseeable that a customer walking past the bench in the main cross aisle would not see the pallet on the floor to his left because his view was blocked by both the bench and the basket he was carrying in his left hand. With the opening to the aisle he wanted being directly to his left, "[t]he legal issue presented here is whether a reasonably prudent person would have anticipated that an injury would result from walking normally * * *" down that aisle. Texler v. D.O. Summers (1998),81 Ohio St.3d 677, 680. If the pallet were filled high enough, then perhaps a customer would see it. But empty, or almost empty, then the aisle might appear to be open to customers.
 {¶ 17} Marc's placed the merchandise pallet directly at the end of an aisle in the middle of the main cross aisle, with the view of the pallet blocked to persons approaching in the main aisle. From one direction the view of the pallet was blocked by the park bench. From the other end, it was blocked by the stack of merchandise. The allegedly empty portion of the pallet was directly in the path of an intersecting aisle. Even if Marc's did not place an empty pallet there, it did place a pallet there that it hoped would be emptied by customers.
 {¶ 18} The manager admitted that an empty pallet would be a hazard. The manager also admitted he took no particular notice of the condition of the pallet despite at least fifty trips past it in the five to seven hours that lapsed between his replenishing the display and the customer falling. The question is whether Marc's created a condition which it should have known had the potential to be made dangerous and whether it appropriately monitored that condition. Customer's inability to provide the exact amount of time the actual hazard existed may be immaterial if Marc's created the situation and thereby knew or should have known that a dangerous condition would develop. Evidence of Marc's actual knowledge of the hazard is unnecessary. Because these questions depend on the circumstances, these are matters for a jury to decide.
 {¶ 19} The first assignment of error has merit.
 {¶ 20} For his second assignment of error, customer states:
 {¶ 21} "The trial court erred in concluding that the hazard complained of was open and obvious, such that plaintiff-appellant cannot recover as a matter of law upon the concepts of comparative negligence."
 {¶ 22} The trial court held that customer "had to have been aware of the risks inherent in the type of shopping atmosphere present at [Marc's]. Unfortunately, it was plaintiff's own negligence which was the cause of this accident for failing to see a very large pallet which can only be described as an open and obvious condition."[3] Journal entry December 13, 2001. "Under the open and obvious doctrine, an owner or occupier of property owes no duty to warn invitees of hazardous conditions that are open and obvious." Schindler, supra, at 150, citingSimmers v. Bentley Constr. Co. (1992), 64 Ohio St.3d 642, 644.
 {¶ 23} This court has held, however, that "the doctrine [is] questionable because it rests on a legal fiction that it relieves the premises owner of the duty to warn. * * * To say that a claim is barred because the defendant owed the plaintiff no duty to warn him of the danger is to disregard an express duty on the part of the premises owner to maintain the premises in a reasonably safe condition." Schindler at 153, citations omitted.
 {¶ 24} In its analysis, this court determined that the open and obvious doctrine is analyzed in the context of the comparative negligence standard. The open and obvious doctrine would permit summary judgment only if the evidence clearly showed that customer's negligence was more than 50% the cause of the accident; however, "[i]ssues of comparative negligence are for the jury to resolve unless the evidence is so compelling that reasonable minds can reach but one conclusion." Id. at 154. As we stated in the first assignment of error, the evidence is not compelling that this hazard was open and obvious.
 {¶ 25} In Schindler, the injured party tripped on a metal rail which had been outside a supermarket where she had shopped on a regular basis for years. The metal rail was not obscured on the day she fell on it. She admitted that she just had not been looking down when she tripped. This court held that "[v]isibility of the metal rail, while important, is only one of several attendant circumstances to be considered." Schindler at 154. In the case at bar, the pallet does not appear to be as visible as the metal bar in Schindler. If summary judgment was not proper under the open and obvious doctrine in Schindler, it is even less proper here.
 {¶ 26} The second assignment of error has merit. This case is reversed and remanded for further proceedings consistent with this opinion.
It is ordered that appellant recover of appellee his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO. P.J., CONCURS; ANN DYKE, J., CONCURS IN JUDGMENT ONLY.
[1] The fracture required several surgeries, including titanium plates and screws. He was out of work for four months and now has limited motion in the elbow.
[2] The manager made an incident report after the initiation of litigation, nearly two years after the event.
[3] We note that Marc's did not raise the open and obvious defense in its motion for summary judgment. This defense originated in the trial court's judgment.